**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**CHAKUISHA GATES**                                                                           **PLAINTIFF**

**V.**                                                  **CIVIL ACTION NO. 3:18cv283 DPJ-LRA**

**NANCY A. BERRYHILL, ACTING**
**COMMISSIONER OF SOCIAL SECURITY**                              **DEFENDANT**

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff appeals the final decision denying her applications for a period of disability, disability insurance benefits ("DIB"), and social security income ("SSI"). The Commissioner requests an order pursuant to 42 U.S.C. §405(g), affirming the final decision of the Administrative Law Judge. Having carefully considered the hearing transcript, the medical records in evidence, and all the applicable law, the undersigned recommends that this cause be affirmed.

In February 2015, Plaintiff filed initial applications for SSI and DIB alleging a disability onset date of January 27, 2015, due to asthma, obesity, mood disorders, diabetes, and high blood pressure. She was 35 years old on her alleged onset date, with an 11th grade education and past relevant work experience as a poultry-deboner. Following agency denials of her application, an Administrative Law Judge ("ALJ") rendered an unfavorable decision finding that she had not established a disability within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review. She now appeals that decision.

At step one of the five-step sequential evaluation,[1] the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. At steps two and three, the ALJ found that although Plaintiff's obesity, degenerative disc disease of the lumbar spine, depression, and anxiety were severe, they did not meet or medically equal any listing. At step four, the ALJ found that Plaintiff had the residual functional capacity to perform light unskilled work:

> except she needs the option to sit or stand at will, but will not be off task for more than ten percent of the work period. The individual could perform simple, routine, and repetitive tasks, with only occasional interaction with the general public and coworkers.[2]

Based on vocational expert testimony, the ALJ concluded that given Plaintiff's age, education, work experience, and residual functional capacity, she could perform work as a surveillance monitor.

## Standard of Review

Judicial review in social security appeals is limited to two basic inquiries: (1) whether there is substantial evidence in the record to support the ALJ's decision; and (2) whether the decision comports with relevant legal standards. *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (citing *Carrier v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991)). Evidence is substantial if it is relevant and sufficient for a reasonable mind to accept as

---

[1] Under C.F.R. § 404.1520, the steps of the sequential evaluation are: (1) Is plaintiff engaged in substantial gainful activity? (2) Does plaintiff have a severe impairment? (3) Does plaintiff's impairment(s) (or combination thereof) meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? (4) Can plaintiff return to prior relevant work? (5) Is there any work in the national economy that plaintiff can perform? *See also McQueen v. Apfel*, 168 F.3d 152,154 (5th Cir. 1999).

[2] ECF No. 8, p. 24.

adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992)). This Court may not re-weigh the evidence, try the case de novo, or substitute its judgment for that of the ALJ, even if it finds evidence that preponderates against the ALJ's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

## Discussion

Plaintiff contends that the ALJ made two related errors at step five of the sequential evaluation: (1) the ALJ relied on the vocational expert's recommendation that she could perform an unskilled job in apparent conflict with her residual functional capacity; and, (2) the ALJ failed to resolve the conflict between the vocational expert's testimony and the Dictionary of Occupational Titles ("DOT") in violation of Social Security Ruling 00-4p.

At the fifth step of the sequential evaluation, the Commissioner may take administrative notice of reliable job information available from the DOT, which classifies reasoning levels for specific jobs on a six-point scale. U.S. Dep't of Labor, *Dictionary of Occupational Titles*, App. C III (4th ed. 1991), 1991 WL 688702; 20 C.F.R. § 404.1566(d). However, the ALJ is not bound by DOT classifications. The Fifth Circuit has long "recognized that the DOT is not comprehensive, in that it cannot and does not purport to include each and every specific skill or qualification for a particular job." *Carey v. Apfel*, 230 F.3d 131, 145 (5th Cir. 2000) (internal citations omitted). Unlike the DOT, which gives only general descriptions of job duties, a "vocational expert is able to

3

compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion as to whether the claimant can perform the specific job." *Fields v. Bowen,* 805 F.2d 1168, 1170-71 (5th Cir. 1986). In *Carey*, the Fifth Circuit explained that:

> [W]e agree with the majority of circuits that the ALJ may rely upon the vocational expert's testimony provided that the record reflects an adequate basis for doing so. . . [A]ll kinds of implicit conflicts are possible and the categorical requirements listed in the DOT do not and cannot satisfactorily answer every such situation. . . . Adopting a middle ground approach, in which neither the DOT nor the vocational expert testimony is per se controlling, permits a more straightforward approach to the pertinent issue, which is whether there is substantial evidence supporting the Commissioner's determination that this particular person can do this particular job or group of jobs.

230 F.3d at 146-47. Thus, even if the vocational expert testimony differs from the DOT, the testimony may constitute substantial evidence upon which the ALJ can rely to satisfy the Commissioner's burden at the fifth step of the sequential evaluation. *Id.*

In this case, Plaintiff argues the vocational expert's testimony is insufficient to satisfy the Commissioner's burden at step five. Specifically, she asserts that her residual functional capacity limitation to simple, routine repetitive tasks conflicts with the sole job identified by the vocational expert which has a Reasoning Level of 3. As the DOT defines it, a Reasoning Level of 3 requires employees to "[a]pply commonsense understanding to carry out instructions furnished in written, oral or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." *Id.* In comparison, a Reasoning Level of 1 requires claimants to "[a]pply commonsense understanding to carry out simple one-or two-step instructions. Deal with

4

standardized situations encountered on the job." DOT Appendix C, 1991 WL 688702. A Reasoning Level of 2 requires employees to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." *Id.*

All three Reasoning Levels require "commonsense understanding of instructions and dealing with problems involving, at most, several variables in or from standardized situations . . . Thus, reasoning level three is very similar to reasoning levels one and two and all three levels are consistent with a limitation to simple, unskilled work." *Johnson v. Astrue,* No. 11-3030, 2012 WL 5472418, at *9 (E.D. La. Oct. 5, 2012), *report & recommendation adopted*, 2012 WL 5472303 (Nov. 9, 2012) (internal quotation marks and citations omitted). However, Plaintiff submits that remand is warranted because, unlike jobs with 1 and 2 reasoning levels, there are no limitations to either the number or the complexity of instructions required for a job with level 3 reasoning. She sees this distinction as an apparent, direct conflict to her residual functional capacity that the ALJ was required to resolve under Social Security Policy Interpretation Ruling ("SSR") 00-4p, 2000 WL 1898704, at *2, and contends the failure to do so was prejudicial.

SSR 00-4p places an affirmative duty on ALJs to identify and obtain explanations for possible conflicts between the vocational expert testimony and the DOT at the administrative hearing, and to explain how any identified conflicts were resolved in their written decision. *See Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016) (holding under SSR 00-4P that an ALJ must inquire into "any possible conflict" between the VE conclusions and DOT). In this regard, Plaintiff concedes two important points: (1) The

5

ALJ asked the vocational expert whether her testimony was consistent with the DOT at the administrative hearing; and, (2) the vocational expert responded affirmatively.  She also acknowledges that the ALJ concluded in her written decision that the vocational expert's testimony was consistent with the DOT.  Notwithstanding, Plaintiff alleges the ALJ's failure to recognize what she considers as an apparent, direct conflict between the reasoning level requirements for the surveillance monitor job and her residual functional capacity limitation to simple, routine repetitive tasks was error.

This Court has joined the majority of federal district courts in holding that "[a] residual functional capacity 'limited to simple work or tasks is not necessarily inconsistent with level-three reasoning.'"  *Wilson v. Berryhill*, No 3:15CV71-DPJ-LRA, 2017 WL 4247556, at *2 (S.D. Miss., Sept. 25, 2017) (quoting *Ruffin v. Colvin*, No. 3:16CV18-DPJ- LRA, 2017 WL 536549, at *4 (S.D. Miss. Feb. 8, 2017) (collecting cases) (observing that "'a job requiring level-three reasoning does not necessarily conflict with an RFC limited to simple and unskilled work.'").  As noted, Reasoning Level 3 requires an employee, in part, to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form." DOT Appendix C, 1991 WL 688702.  The fact that instructions may be furnished in written, oral, or diagrammatic forms, does not preclude a person limited to simple, routine repetitive tasks from applying commonsense understanding to carry them out.  *See Pete v. Astrue*, Civil Action No. 08-774, 2009 WL 3648453, at *5 (W.D. La. Nov. 3, 2009).  Nor is a claimant with such limitations necessarily precluded from dealing with problems in standardized situations with several variables like monitoring a surveillance system.

6

Plaintiff's exclusive reliance on the DOT is misplaced. The DOT merely outlines the "maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings." SSR 00-4p, 2000 WL 1898704, at *2-3. While it is quite possible that some top level-three reasoning jobs may conflict with Plaintiff's limitations, it does not necessarily follow that there is an obvious, direct conflict between the claimant's residual functional capacity and all level three jobs, or the job identified in this case. *Ruffin,* 2017 WL 536549, at *5 ("So while the top of DOL Reasoning Level three might arguably surpass an RFC that limits work to tasks involving one-to two-step instructions, it is not apparent that such limitations exclude the range that Reasoning Level three addresses."). *See also Webb v. Astrue,* No. 4:08-CV-747-Y, 2010 WL 1644898, at *12 n. 3 (N.D. Tex. Mar. 2, 2010) (*report and recommendation adopted*, 2010 WL 1644697 (N.D. Tex. Apr. 22, 2010)) ("A job as a city bus driver that requires a [Reasoning Level] of three is not necessarily inconsistent with [a residual functional capacity] that includes only the ability to perform simple, routine work tasks."); *Abel v. Astrue*, No. 3:09CV327-TSL-FKB, 2011 WL 1099890, at *7 (S.D. Miss. Mar. 2, 2011) (explaining that "[w]hile certainly an argument can be made that the ability to perform only simple, repetitive tasks is inconsistent with Level 3 reasoning, the two are not in obvious, direct conflict"), *report & recommendation adopted*, 2011 WL 1044155 (S.D. Miss. Mar. 22, 2011).

Even assuming the existence of a conflict between the DOT and the vocational expert testimony in this case, it is an implied or indirect conflict. *Carey*, 230 F.3d at 142. *See Johnson,* No. 11-3030, 2012 WL 5472418, at *9 ("A tangential, implied or indirect

7

conflict occurs when there is no direct conflict between the expert testimony regarding the exertional or skill level required for a particular job and the Dictionary of Occupational Titles, but additional inferences can be drawn (and the plaintiff is asking the court to draw them on appeal) that the Dictionary of Occupational Titles description may conflict with the vocational expert's testimony that the claimant is capable of performing a particular job."). Further, Plaintiff failed to raise the purported conflict when given the opportunity to cross-examine the vocational expert at the administrative hearing. *Jasso v. Barnhart*, 102 F. App'x 877, 878 (5th Cir. 2004). This Court has previously held than an "unexplained" conflict raised on appeal did not require remand when Plaintiff "failed to raise it before the hearing officer." *Ruffin*, 2017 WL 536549, * 7. She should not now be permitted to raise the conflict when it was not "deemed sufficient to merit adversarial development in the administrative hearing." *Carey*, 230 F.3d at 145–147.

As this Court has observed, reasoning levels and residual functional capacity determinations do not always neatly align. *Ruffin*, 2017 WL 536659, * 5. "[A]ll kinds of implicit conflicts are possible and the categorical requirements listed in the DOT do not and cannot satisfactorily answer every such situation." *Carey*, 230 F.3d at 142. However, an ALJ may rely on a vocational expert's testimony if the hypothetical question "reasonably incorporate[s] the disabilities and limitations recognized by the ALJ." *Dise v. Colvin*, 630 F. App'x 322, 326 (5th Cir. 2002) (internal quotations marks and citation omitted). In this case, the ALJ presented a hypothetical that contained all the non-exertional limitations that were supported by the record: simple, routine, and repetitive

8

tasks, with only occasional interaction with the general public and coworkers. In response, the vocational expert testified that a claimant with these limitations could perform work as a surveillance monitor. Plaintiff did not provide any vocational evidence to the contrary, or object to the ALJ's residual functional capacity determination. The ALJ was entitled to rely on the vocational expert's unchallenged testimony. *Id*.

For all the above reasons, it is the opinion of the undersigned United States Magistrate Judge that Plaintiff's motion should be denied; that Defendant's Motion for Order Affirming the Commissioner should be granted; and that Final Judgment in favor of the Commissioner should be entered.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the Local Uniform Civil Rules of the United States District Courts for the Southern District of Mississippi, any party within 14 days after being served with a copy of this Report and Recommendation, may serve and file written objections. Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective

9

December 1, 2009); *Douglas v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

      SO ORDERED on June 27, 2019.

                                                                                   s/ Linda R. Anderson
                                                UNITED STATES MAGISTRATE JUDGE